ORDERED in the Southern District of Florida on _Jan 31, 2007_



_____
John K. Olson, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

In re:                                                          CASE NO. 04-27388-BKC-JKO

AQUA CLEAR TECHNOLOGIES, INC.,

       Debtor.                                                 Chapter 7

_____/

KENNETH A. WELT, as Trustee
for the Estate of AQUA CLEAR
TECHNOLOGIES, INC., f/k/a EcoWater
of South Florida, Inc.

       Plaintiff,

vs.                                                             ADV. NO. 05-2092-BKC-JKO-A

HARVEY JACOBSON,
BARBARA JACOBSON and
DISCOUNT WATER SERVICES, INC.,

       Defendants.

_____/

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND MEMORANDUM OPINION

This adversary proceeding was tried before me on October 11 and 27, 2006.  Having

considered the pleadings, the pretrial order, the testimony of witnesses, the exhibits entered into

evidence and the arguments of counsel, I make the following findings of fact and conclusions of law:

### I. INTRODUCTION

Harvey and Barbara Jacobson, the individual defendants in this case, operated a small

business installing and servicing home water softening systems through the Debtor, Aqua Clear

Technologies, Inc. ("Aqua Clear") and, after its bankruptcy filing in December 2004, through the

defendant Discount Water Services, Inc.  In the course of doing so, the Jacobsons disregarded

corporate formalities, made whole series of false statements to the United States and to various

banks, ignored creditors, and stripped the Debtor of what little value it had.  The Jacobsons' behavior

in doing so was fundamentally dishonest.  No great amounts of money were involved, but even petty

cheating of the sort engaged in by the Jacobsons diminishes civil society and the rule of law.

Kenneth A. Welt, the Trustee for Aqua Clear, brought this action seeking to avoid and

recover preferential and/or fraudulent transfers and seeking turnover of property to the estate

pursuant to 11 U.S.C. §§ 542, 544, 547, 548 and 550, and *Fla. Stat.* Chapter 726.  This adversary

proceeding also alleges conversion and breach of fiduciary duty claims and seeks injunctive relief.

(Pretrial Order [*see* A.C.P. #102] at 1).

### A. Jurisdiction and venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), as this is a civil

proceeding arising in or related to a case under the Bankruptcy Code.  This Court also has

jurisdiction under 28 U.S.C. § 1334(e), as this adversary proceeding involves property of the Debtor's estate. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue of this proceeding is properly before the Court pursuant to 28 U.S.C. § 1409. (*See* Pretrial Order at ¶5).

## B. Findings of fact

The Debtor is a Florida corporation. (*See* Ex. 5). While it operated, the Debtor was in the business of selling and servicing water softening systems. It filed this voluntary Chapter 7 bankruptcy proceeding on December 8, 2004. Kenneth A. Welt (the "Trustee") has been appointed and serves as the Chapter 7 Trustee. The Trustee filed this adversary proceeding against Harvey Jacobson, Barbara Jacobson and Discount Water Services, Inc. ("Discount Water") on behalf of the Debtor's bankruptcy estate.

Defendants Harvey Jacobson and Barbara Jacobson are husband and wife. (Trial Transcript [A.C.P. #123] at 64, lines 13-24).

Barbara Jacobson was the President of the Debtor. Barbara Jacobson admits, however, that "she is a housewife and has 'nothing to do with the [Debtor's] business whatsoever'." (Pretrial Order at ¶15). When asked, "What did you do as President [of the Debtor]? What were your duties?", Ms. Jacobson testified, "I was in there every so often. I went in, I spoke to Augie [Fartro]. I spoke to Harvey, I brought in cookies. I brought in muffins." (Trial Transcript [A.C.P. #123] at 57, lines 30-35).

Barbara Jacobson had no responsibilities for the operations, finances, or record keeping of the business. She did not review the Debtor's invoices, accounts receivable or accounts payable, keep apprised of checks written on the Debtor's bank accounts or the status of the Debtor's bank accounts, or keep the Debtor's books and records. (Trial Transcript at 60, line 22 through 63, line

3

16). She had virtually no participation in any aspect of the Debtor's business. (Trial Transcript at 72, lines 22-23 "If my [signature] appears on a [Debtor] check, it's probably purely by accident."). She left the business of the Debtor to Harvey Jacobson and Augusto "Augie" Fartro.[1] (Trial Transcript p. 62, lines 6-10 and 65, line 5 through 66, line 9).

Harvey Jacobson was not an officer, director or employee of the Debtor. Rather, he purported to serve as an independent contractor to the Debtor. However, he controlled the Debtor and its day-to-day operations. (Pretrial Order at ¶28). Harvey Jacobson testified that he provided the Debtor's attorney with all of the information contained on the Bankruptcy Petition, Bankruptcy Schedules, Amended Bankruptcy Schedules and Debtor's Statement and Amended Statement of Financial Affairs. Barbara Jacobson knew nothing about the Debtor's business affairs and merely affixed her name to the bankruptcy documents without knowing anything about their contents.

No compensation agreement or formula set a salary for Harvey or Barbara Jacobson. Rather, Harvey Jacobson testified that he and his wife took cash out of the business and received compensation whenever he decided that the Debtor had sufficient funds available for them to do so. According to Barbara Jacobson, she never received a salary. (Trial Transcript at 73, lines 10-21). The Debtor's 2003 and 2004 Federal Income Tax Returns report "$0" for Salaries and Wages. (*See* Ex. 13 at HRB 34, lines 7-8 and Ex. 14 at HRB 5, lines 7-8, and Testimony of Mary McWhertor, Certified Public Accountant and Mary McWhertor, H&R Block, the Debtor's pre-petition tax preparer).

While the Jacobsons may not have drawn "salaries or wages" from the Debtor, they caused the Debtor's funds to be expended for their personal expenses. (Trial Transcript at 73, lines 19-21).

---

[1] From 1997 until the end of 2003, Mr. Fartro was Vice President and an employee of the Debtor. (*See* Trial Transcript at 99, lines 7-15).

Among other expenses, during the years preceding the bankruptcy filing, the Debtor paid for the maintenance and utilities of the Jacobson's home and personal needs, *e.g.,* its lawn care and pool service, telephone, water and electric service, a personal computer given as a gift to a family member and other personal expenses. (*See* Testimony of Harvey and Barbara Jacobson, and Exs. 70 (Affordable Lawn Care), 77 (BellSouth), 81 (Complete Pool Service), 91 (FP&L) and 102 (North Springs Improvement District)). The Debtor also paid Harvey and Barbara Jacobson's personal credit card bills or reimbursed Harvey and Barbara Jacobson for such expenses. Mr. Fartro testified that, at all times when he was employed by the Debtor, the Debtor maintained organized business records in files. (Trial Transcript at 200, line 20 through 202, line 15). However, Mr. Fartro ceased to be employed by the Debtor a year prior to the commencement of the Debtor's bankruptcy case. (*See* Trial Transcript at 99, lines 7-15). Mr. Jacobson has destroyed[2] almost all of the credit card statements which the Debtor paid, making it impossible to evaluate the claim that these expenses were for the Debtor's legitimate business-related expenses. Hence, there is no evidence, other than *post hoc* self-serving statements, that the Debtor's payments of the personal credit card bills were appropriate here.

The Debtor's bank records further show that the Debtor made recurring payments to "Ford Motor Credit" (*see* Ex. 90) and "Mazda American Credit" (*see* Ex. 101). The Debtor claimed business deductions for "vehicle" in its 2003 and 2004 Federal Income Tax Returns, claiming "100% Business Use."[3] (*See* Ex. 13 at HRB 47, 49 & 50, item no. 10 and Ex. 14 at HRB 14, line 26). The Debtor did not own any such vehicle. However, a 2000 Mazda vehicle bearing the VIN number

---

[2] Mr. Jacobson testified that he did so in order to prevent theft of his credit card information. Regardless of motivation, the effect of this conduct is that the financial information the documents contained is not available.

[3] On its 2004 Federal Income Tax Return (Form 11205), the Debtor listed a vehicle with an original cost in 2002 of $18,500 as 100% "Business Use". (*See* Ex. 14 at HRB 13). No such vehicle was listed on the Debtor's Bankruptcy Schedules or Amended Bankruptcy Schedules. (*See* Exs. 1 & 2).

4F4YR16V9YTM05597 was titled in Harvey Jacobson's name. Harvey Jacobson traded in the 2000 Mazda vehicle for a Mitsubishi vehicle that is titled in his name. (*See* Ex. B). The Mitsubishi vehicle is used for the business purposes of a company called Discount Water. There was no transfer of a vehicle listed on the Debtor's Statement of Financial Affairs. (*See* Ex. 1 at PLE 49 and Ex. 2 at PLE 17).

The Debtor paid for numerous other personal expenses of the Jacobsons. For example, the Debtor paid health insurance premiums which covered Harvey and Barbara Jacobson and their adult daughter Sharon Jacobson. (*See* Ex. 107). Harvey Jacobson admitted, however, that Sharon Jacobson had no role in, and performed no function at, the Debtor. Barbara Jacobson testified that Sharon Jacobson was listed as an employee of the company so that she could be covered by the Debtor's health insurance. (*See* Trial Transcript at 88, line 22 through 90, line 8). Sharon Jacobson was also listed as an officer of Discount Water although, again, she provided no services to Discount Water, yet received paid health insurance. *Id.*

On December 8, 2004, the Debtor filed a bankruptcy petition. Twenty-one days later, Harvey Jacobson caused Defendant Discount Water Services to be incorporated. (Pretrial Order at ¶11). Discount Water is in the business of servicing water softening systems. It services some of the same customers that the Debtor serviced in the same geographic area: Miami-Dade, Broward and Palm Beach Counties. Barbara Jacobson and Sharon Jacobson were Discount Water officers from its inception through April 27, 2006. After April 27, 2006, Harvey Jacobson became Discount Water's sole officer. (*See* Pretrial Order at ¶25, and Ex. 3).

Harvey Jacobson admitted that Discount Water appropriated certain equipment and inventory belonging to the Debtor. Harvey Jacobson claimed that this equipment and inventory had little to no value, but has submitted no evidence, other than self-serving statements, to support that

6

contention. In fact, the Debtor and the Jacobsons never provided the Trustee with a list of the inventory or equipment transferred and did not identify the transfers on the Debtor's Statement of Financial Affairs. (*See* Ex. 1 at PLE 49 and Ex. 2 at PLE 17 – response to Question 10).

The Debtor advertised its telephone number as (954) 984-0000, an appealingly easy-to-remember number. (*See* Ex. 46). Discount Water advertises the same telephone number. (*See* Ex. 44).

Pre-petition, EcoWater Systems, Inc. ("EcoWater") obtained a Minnesota judgment against the Debtor in the amount of $10,846.76 and domesticated that judgment in Florida.[4] On its initial Schedules, the Debtor lists EcoWater's claim as being valued at $1.00. Four months after the Trustee brought this adversary proceeding, the Debtor filed Amended Schedules in which EcoWater's claim is listed as $10,500 and, despite having been reduced to judgment, it is listed as contingent, unliquidated and disputed. (*See* Pretrial Order at ¶13).

As of the date of the petition, the Debtor listed creditors (including EcoWater) with claims valued at least in the amount of $108,732.64. (*See* Ex. 2 at PLE 10-13). Barbara Jacobson signed the Debtor's Schedules and Statement of Financial Affairs under penalty of Perjury. (*See* Trial Transcript at 79, line 2 through 83, line 9).

On or about September 7, 2005, the Jacobsons caused the Debtor's Amended Bankruptcy Schedules and Amended Statement of Financial Affairs to be filed again under penalty of perjury. (*See* Ex. 2). The Complaint in the adversary proceeding was filed on April 28, 2005.

---

[4]The law firm representing the Trustee as special counsel in this adversary proceeding is the same law firm which represented EcoWater in attempting to collect on its judgment against the Debtor. The retention affidavit filed by special counsel recites that "[s]ubject to court approval EcoWater has agreed to pay [special counsel's] attorneys' fees and expenses for the representation of the Trustee as special counsel." *See Supplemental Affidavit of Proposed Attorney for Trustee*, CP 18 in the Debtor's main case. The Trustee's willingness and ability to take this case to trial is only understandable in the context of this creditor's willingness to pay the bills; EcoWater's willingness to pay smacks of carrying a business dispute to the level of a grudge.

## II. CONCLUSIONS OF LAW

### A. The Trustee's claims for conversion and breach of fiduciary duty

#### 1. Conversion (Count XV)

"Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" *Warshall v. Price,* 629 So. 2d 903, 904 (Fla. 4th Dist. Ct. App. 1993). A claim for conversion is appropriate where the defendant has wrongfully taken personal property or an intangible interest in a business venture. *Id.; see also In re Corbin's Estate,* 391 So. 2d 731, 732 (Fla. 3rd Dist. Ct. App. 1980). Misappropriation of a business opportunity likewise constitutes conversion. *See In re Burress,* 245 B.R. 871 (Bankr. D. Colo. 2000).

The evidence here clearly demonstrates that Harvey Jacobson controlled the Debtor and that Harvey Jacobson controls the Defendant Discount Water Services. As such, Harvey and Barbara Jacobson and the Defendant Discount Water are insiders of the Debtor. 11 U.S.C. § 101(31).

A fiduciary relationship exists when one party is under a duty to act for or give advice for the benefit of another. *See Restatement (Second) of Torts,* § 874, cmt. a (1979); *Restatement (Second) of Trusts,* § 2, cmt. b (1959). A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct, and the wronged party is entitled to tort damages for harm caused by the breach of the duty. *See Restatement (Second) of Torts,* § 874, Comment b (1979); *Restatement (Second) of Agency,* §§ 401-407 (1958); *Restatement (Second) of Trusts,* §§ 197-226A (1959); *Restatement (Second) of Restitution,* §§ 138, 190 (1988).

Harvey Jacobson and the Debtor had a confidential or fiduciary relationship. Harvey Jacobson and the Defendant Discount Water had a confidential or fiduciary relationship. Whenever a confidential or fiduciary relationship is established, the burden falls upon the trusted party to show that his conduct was proper. *See Desser v. Woods,* 296 A.2d 586, 593 (Md. 1972).

8

Harvey Jacobson claims that the telephone number (954) 984-0000 is his personal property. The evidence demonstrates otherwise. Mr. Jacobson leases use of the (954) 984-0000 telephone number from a third-party service provider, FDN. The Debtor paid FDN for the telephone number. (*See* Ex. 89). Although the Debtor had other telephone numbers, the (954) 984-0000 number was its primary or main telephone number. (*See* Trial Transcript at 118, lines 13-25). The Debtor advertised the (954) 984-000 telephone number to the public. (*See* Ex. 46). Defendant Discount Water now advertises the same telephone number to the public. (*See* Ex. 44).

Harvey Jacobson testified that the Debtor routinely affixed the (954) 984-0000 telephone number on water filtration equipment installed or serviced at customers of the Debtor. He further testified that Discount Water continues to service customers of the Debtor who still call the telephone number (as a result of the Debtor having posted it on the water systems) and, for this reason, the telephone number is clearly a valuable asset owned by the Debtor and now utilized by Discount Water. Discount Water has not paid the Debtor or the Trustee any consideration for the use of the telephone number.

Accordingly, the Court, by separate document, shall enter judgment in favor of the Trustee on Count XV. The Court hereby finds that the telephone number (954) 984-0000 is property of the Debtor's estate which the Trustee may sell under 11 U.S.C. § 363(b). Any such sale shall be on notice of creditors and parties in interest, including Discount Water and Harvey Jacobson. To the extent that conveyance of the telephone number requires the execution of additional documents or further order of the Court, the Trustee may seek such ancillary relief by motion filed in the Debtor's main case. Finally, Harvey Jacobson and Discount Water are directed to account to the Trustee within thirty days of the entry of this order for the profits of Discount Water derived from the use of telephone number (954) 984-0000.

9

## 2.  Breach of Fiduciary Duty (Counts XVI, XVII)

The Plaintiff seeks judgment against Barbara Jacobson under the theory that she breached her fiduciary duty to the Debtor (Count XVI) and Discount Water (Count XVII).

### (a) Count XVI

Under applicable Florida corporate law, a director must perform his or her corporate duties (1) in good faith; (2) with such care as an ordinary prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interests of the corporation. *Fla. Stat.* § 607.0830(1).  Florida law has long recognized that corporate officers and directors owe duties of loyalty and a duty of care to the corporation. *See Cohen v. Hattaway*, 595 So. 2d 105 (Fla. 5th Dist. Ct. App. 1992); *B&J Holding Corp. v. Weiss*, 353 So. 2d 141 (Fla. 3rd Dist. Ct. App. 1978).  An officer's or director's fiduciary duties are extended to the creditors of a corporation when the corporation becomes insolvent or is in the "vicinity of insolvency".  *See Toy King Distributors, Inc.*, 256 B.R. 1 (Bankr. M.D. Fla. 2000).  A corporate officer or director breaches the duty of loyalty if that person "depart[s] from his corporate responsibility and start[s] serving himself." *Intercarga International De Carga, S.A. v. Harper Group, Inc.*, 659 So. 2d 1208, 1210 (Fla. 3rd Dist. Ct. App. 1995).

As director (and president) of Aqua Clear, Barbara Jacobson owed the Debtor a fiduciary duty to act in good faith and in the best interest of the corporation. *See, e.g., Fla. Stat.* § 607.0830; *Rehabilitation Advisors, Inc. v. Floyd*, 601 So. 2d 1286, 1288 (Fla. 5th Dist. Ct. App. 1992).  There is no question that at all times relevant, the Debtor was insolvent.  (*See* Trial Transcript at 117, line 10 through 188, line 4 and Ex. 51 at 2).  Thus, Barbara Jacobson owed a fiduciary duty to the Debtor's creditors.  She was, therefore, required to exercise due care in the supervision and management of the company and the performance of her duties for the benefit of its creditors. *Fla.*

10

*Stat.* § 607.0830(1).

Barbara Jacobson admits, however, that she failed to take *any* steps to properly discharge her fiduciary duties. Rather, Barbara Jacobson granted her husband Harvey Jacobson, who served the Debtor as an "independent contractor" without any written contract, and Augusto Fartro, her fellow officer and director, unsupervised and unrestrained authority over the Debtor. For example, Ms. Jacobson signed the petition which commenced this bankruptcy case, under penalty of perjury, without investigation and wholly in reliance upon her husband and Mr. Fartro (although Mr. Fartro's admits his involvement with the Debtor's affairs completely ceased at least one year prior). (*See* Trial Transcript at 81, line 4 through 83, line 9).

Barbara Jacobson admitted she gave Harvey Jacobson blanket authority to sign her name on the Debtor's negotiable instruments and all other official documents, which he routinely did throughout the Debtor's existence. (*See* Trial Transcript at 69, line 15 through 70, line 4 and 93, lines 13-24). In fact, Barbara Jacobson testified that although her name was signed on hundreds of the Debtor's checks which were admitted into evidence, it was "purely by accident" if she actually signed any of them. (*See* Trial Transcript at 72, lines 3-23). Defendants provided no plausible explanation for this practice (*See* Trial Transcript at 93, line 22 through 95, line 16), which apparently included Mr. Jacobson's execution of bank documents (other than checks) to which he affixed what purported to be Barbara Jacobson's signature. The absence of any rational explanation for these practices makes clear that Barbara Jacobson failed to exercise any authority or oversight over the Debtor's financial affairs and, by not doing so, breached her fiduciary obligations of care and loyalty to the Debtor and its creditors.

Indeed, Barbara Jacobson admitted that she became the Debtor's (and Discount Water's) President solely to obtain 40 quarters of participation in the Social Security System in order to

11

become eligible for Social Security benefits. (*See* Trial Transcript at 87, line 24 through 88, line 8). It appears to the Court that this constitutes a violation of 42 U.S.C. § 408 as a continuing series of false statements and representations to the United States for purposes of obtaining Social Security benefits to which she was not entitled, as well as a violation of 18 U.S.C. § 1001, which prohibits the making of false statements or representations to the United States. Since she acted in concert with her husband in so doing, it appears to the Court that both Barbara Jacobson and Harvey Jacobson have conspired to defraud the United States in violation of 18 U.S.C. § 371. The Court will direct the Office of the United States Trustee to investigate these matters further and, if that investigation concludes that these or other statutory violations may have occurred, to refer the matter to the United States Attorney for the Southern District of Florida for investigation pursuant to 18 U.S.C. § 3057.

Moreover, Barbara Jacobson admits she performed little to no services for the Debtor yet received checks from the Debtor totaling $13,875 from October 5, 2002 through and including October 26, 2003. (*See* Ex. 98). The Jacobsons themselves offered into evidence a copy of a 2003 IRS Form 1099-Misc. for Barbara Jacobson, listing $5,775 in non-employee compensation for that year. She also received valuable health insurance benefits for no ascertainable business purposes.

The Debtor also paid many of Barbara Jacobson's personal household expenses of at least $10,257.14. (*See* total of Exs. 70, 77, 81, 91 & 102).

Barbara Jacobson further breached her duty to the Debtor by permitting Harvey Jacobson to cause the Debtor to provide health benefits for their adult daughter Sharon, although, as acknowledged in Barbara Jacobson's own testimony, Sharon Jacobson provided no services whatsoever to the Debtor.

The evidence showed that, between September 10, 2002 and November 29, 2004, the Debtor

paid a total of $37,093.73 to provide health insurance benefits for Barbara Jacobson, Harvey Jacobson, Augusto Fartro and Sharon Jacobson. Of the four persons for whom the Debtor provided health insurance coverage, only Mr. Fartro qualified as an employee (although Harvey Jacobson almost certainly should have been considered as an employee, rather than as an independent contractor). Mr. Fartro's employment with the Debtor ended no later than during the fourth quarter of 2003, if not before. (Trial Transcript at 88, line 23 through 90, line 8). Mr. Fartro reimbursed the Debtor for health coverage received after his employment ended.

Accordingly, the Court holds that Barbara Jacobson breached her fiduciary duty to the Debtor at a time when the Debtor was insolvent or within the vicinity of insolvency and, by separate order, shall enter judgment against Barbara Jacobson and in favor of the Trustee in the amount of $42,668.64, which is the aggregate of $13,875 in checks received by Barbara Jacobson, plus $10,257.14 in personal household expenses paid for the benefit of Barbara Jacobson, plus $18,536.50 (half of $37,073), the portion of the health insurance benefit paid by the Debtor for health insurance for Barbara Jacobson and Sharon Jacobson.

### (b) Count XVII

The Trustee contends that Discount Water is an alter ego of the Debtor. To disregard the corporate entity form and find that one entity is the alter ego of another, three elements must be established under Florida law:

a. Domination and control of the corporation to such an extent that it has no independent existence;

b. That the corporate form was used fraudulently or for an improper purpose; and

c. That the fraudulent or improper use of the form proximately caused the creditor's injury.

*Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So. 2d 1114 (Fla. 1984).

The Debtor commenced this bankruptcy case on December 8, 2004. Discount Water was incorporated 21 days later. When the Debtor filed bankruptcy, it was resisting post-judgment creditor action by EcoWater Systems, Inc. (*See generally* Exs. 34, 35 & 36 and note 4, *supra*). The law firm which represented the Debtor in the post-judgment creditor action is the same law firm that incorporated Discount Water. (*Compare* Ex. 41 with Ex. 3 at 3).

The Debtor and Defendant Discount Water were in substantially the same business. They used the same telephone number. They operated from the same business address. They serviced the same geographic area and many of the same customers. Until April 27, 2005, when Barbara Jacobson resigned as President of Discount Water, she was the only President either the Debtor or Discount Water had and a director of both. The Debtor and Discount Water had identical officers and directors. The Court may presume fraud when a transfer occurs between two corporations controlled by the same officers and directors. *J.I. Kelley Co. v. Pollock,* 49 So. 934, 935 (Fla. 1909). There is no credible evidence before the Court that suggests that Discount Water is anything other than a continuation of the Debtor's business under a new name.

Perhaps the clearest piece of evidence demonstrating the identity of the Debtor and Discount Water is in the following letter sent to Aqua Clear's health insurance carrier:

1-03-05

To Whom It May Concern:

We are changing the name of Aqua Clear Technologies Inc., account #76801 to DISCOUNT WATER SERVICES INC.. Please change your records as soon as possible. Please forward all correspondence to us with our new name, DISCOUNT WATER SERVICES INC.

Yours truly,

Barbara Jacobson

(*See* Ex. 39, a letter to Vista Health Plan).

14

Clearly, the author of the letter is declaring that Discount Water Services and the Debtor are one and the same. The third-party health insurance provider acted in reliance on this letter. (*See* Trial Transcript at 101, line 19 through 107, line 14). Consistent with the Defendants business conduct, Barbara Jacobson did not sign her name to the January 3, 2005 letter to Vista Health Care. Rather, it was another example of the peculiar practice of Harvey Jacobson signing Barbara Jacobson's name. (*See* Trial Transcript at 86, line 6 through 87, line 12).

I conclude that Discount Water is the alter ego of the Debtor. The evidence makes clear that the Jacobsons created Discount Water simply to continue the business of the Debtor using the Debtor's assets. The Jacobsons divested the Debtor of such assets as it retained at the time of its bankruptcy filing, motivated in large part by a desire to thwart the collection efforts of EcoWater, the judgment creditor which was undertaking proceedings supplementary at the time of the Debtor's bankruptcy filing. (*Compare* Ex. 1, Schedule B, Question 20 with Amended Schedule B, Question 20). The Jacobsons thus delivered an empty shell of the Debtor to the bankruptcy court in contravention of their duty to their creditors.[5]

When conducting an analysis concerning a fraud to avoid the liabilities of a predecessor, a Florida court has observed: "[the] bottom line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other." *Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.,* 523 So. 2d 740, 742 n. 1 (Fla. 5th Dist. Ct. App. 1988). Here, the assets transferred from the Debtor to Discount Water were in exchange for no *bona fide* consideration, let alone for reasonably equivalent value. I necessarily conclude that

---

[5] The assets which the Jacobsons took from the Debtor prior to delivering the corpse to the bankruptcy court may well have had relatively little value in dollar terms. That isn't the point. By taking whatever property did have value, however meager, the Jacobsons acted in a fundamentally dishonest way and deprived the Debtor's creditors of that value. The other incidents of inappropriate conduct in the record here —ghost employees, misrepresentation to insurance providers and the Social Security Administration, etc.—make clear that the Jacobsons' business methods are dishonest.

Discount Water is simply the continuation of Aqua Clear's business in another name, using the same assets and employees as had its predecessor. Using the 5th DCA's metaphor, Discount Water took the baton passed by the Debtor and has run with it and in the process has become the Debtor's alter ego. Discount Water is therefore liable to the Debtor's creditors for all of the Debtor's liabilities, including those listed on the Bankruptcy Schedules.

Accordingly, the Court will enter a separate judgment against Discount Water in the Trustee's favor on Count XVII in the amount of $108,732.64, the total claims listed in the Debtor's Amended Bankruptcy Schedules. The Court will retain jurisdiction over the judgment to the extent that it will award administrative expenses and whatever other claims are allowed against the Debtor and add them to the total amount of the judgment. To this end, the Court orders the Trustee, Trustee's special counsel, and other professionals to file fee applications within 30 days of the entry of this order to determine the administrative claims of the estate such that they may be awarded in an amended final judgment.

## B. The Trustee's claims for fraudulent and preferential transfers

### 1. Fraudulent transfers under 11 U.S.C. § 548(a)(1)(A)

Counts I (fraudulent transfer as to Harvey Jacobson) and VIII (fraudulent transfer as to Barbara Jacobson) seek avoidance of fraudulent transfers under 11 U.S.C. § 548(a)(1), which permits the Trustee to avoid any transfer that the Debtor made within one year before its bankruptcy filing, where the transfer was made with actual intent to hinder, delay, or defraud any creditor. The Debtor filed its bankruptcy petition on December 8, 2004, and, pursuant to § 548(a)(1)(A), the Trustee may therefore avoid any fraudulent transfers the Debtor made on or after December 8, 2003. The Trustee has met his burden of proof that certain transfers were fraudulent by preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286 (1991); *In re Model Imperial, Inc.,* 250 B.R. 776, 790-91

(Bankr. S.D. Fla. 2000); *In re American Way Service Corp.*, 229 B.R. 496, 525 (Bankr. S.D. Fla.

1999); *In re Pembroke Development Corp.*, 124 B.R. 398, 400 (Bankr. S.D. Fla. 1991).[6]

      The same legal analysis applies under § 548(a)(1) as under *Fla. Stat.* Chapter 726.  Under

Florida law, the following eleven factors are to be considered in assessing the validity of a transfer:

(a)     The transfer or obligation was to an insider.[7]

(b)     The debtor retained possession or control of the property transferred after the transfer.[8]

(c)     The transfer or obligation was disclosed or concealed.[9]

(d)     Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.[10]

(e)     The transfer was of substantially all the debtor's assets.[11]

(f)     The debtor absconded.

(g)     The debtor removed or concealed assets.[12]

(h)     The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.[13]

(I)     The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.[14]

(j)     The transfer occurred shortly before or shortly after a substantial debt was incurred.

---

[6] A minority view taken by some cases (*e.g., In re Ste. Jan-Marie, Inc.,* 151 B.R. 984, 987 (Bankr. S.D. Fla. 1993) held that the appropriate burden of proof in fraudulent transfer actions is under a "clear and convincing" standard.  I believe that this view is inconsistent with *Grogan v. Garner, supra,* and reject it.

[7] *Fisher v. Grady*, 178 So. 852, 858 (Fla. 1938); *Money v. Powell,* 139 So. 702, 703-04 (Fla. 2nd Dist. Ct. App. 1962).

[8] *Jones v. Wear,* 149 So. 345 (Fla. 1933).

[9] *Cleveland Trust Company v. Foster*, 93 So. 2d 112 (Fla. 1957).

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Gyorok v. Davis*, 183 So. 2d 701, 703 (Fla. 3rd Dist. Ct. App.  1966).

[14] *Banner Construction Corp. v. Arnold*, 128 So. 2d 893, 896 (Fla. 1st Dist. Ct. App. 1961).

(k)   The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. §726.105(2); *In re Paul*, 217 B.R. 336, 337, n. 1 (Bankr. S.D. Fla. 1997) (court may rely on state law remedies in action to avoid fraudulent transfers). While a single badge of fraud may amount only to a suspicious circumstance, a combination of badges will justify a finding of fraud. *United States v. Fernon*, 640 F. 2d 609, 613 (5th Cir. 1981). The presence of several badges of fraud gives rise to a rebuttable inference of fraud. *Advest, Inc. v. Rader*, 743 F.Supp. 851, 854 (S.D. Fla. 1990). Here, eight of these eleven "badges of fraud" are present.

First, the transfers made to or on behalf of the Jacobsons were transfers "to an insider." *Fla. Stat.* §726.105(2)(a); 11 U.S.C. § 101(31)(B) (where debtor is a corporation insiders includes, *inter alia*, corporate officers, persons in control of debtor and any relatives of officers or persons in control); *In re Paul*, 217 B.R. at 338 (transfer in satisfaction of insider's obligation to third party a transfer to an insider); *In re Torcise*, 146 B.R. 303, 305 (Bankr. S.D. Fla. 1992) (spouse an insider). The Debtor made numerous transfers to the Jacobsons (*e.g.,* the personal computer the Debtor purchased for them, the corporate inventory and telephone number they and Discount Water received and the automobile they retain) or for their benefit (*e.g.,* payment of their personal expenses).

The second applicable badge of fraud is whether the Debtor retained possession or control of the property after its transfer. *Fla. Stat.* § 726.105(2)(b). As discussed above, Harvey Jacobson formed Discount Water three weeks after the Debtor's bankruptcy filing, with the same officers and directors. Discount Water provides the same services to the same customers as did the Debtor, using the same management, personnel, assets, location and telephone number. Indeed, the Jacobsons have represented to third parties that Discount Water is simply Aqua Clear's new name. Thus, as a matter of law, Discount Water is a mere continuation of the Debtor which is therefore improperly

18

maintaining control of property that should be administered by the Trustee. *300 Pine Island Assoc.*
*v. Steven L. Cohen & Assoc.*, 547 So. 2d 255, 256 (Fla. 4th Dist. Ct. App. 1989) (*citing Orlando Light*
*Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.*, 523 So. 2d 740, 742, n.1 (Fla. 5th Dist. Ct.
App. 1988)) (mere continuation occurs where new entity has same management, personnel, assets,
location, and stockholders).

     The existence or threat of suit at or before the time of transfer is also a "badge of fraud" that
the Court must consider. *See Fla. Stat.* § 726.105(2)(d). Here, many of the transfers at issue were
made after entry of the judgment against the Debtor in favor of EcoWater.

     Another enumerated badge of fraud is a transfer "of substantially all the debtor's assets."
*Fla. Stat.* § 726.105(2)(e). The Schedule of Assets makes clear that the Debtor was almost entirely
devoid of assets. The Defendants, however, provided no documentation or explanation for how and
why they disposed of the corporate assets. Moreover, by transferring assets to Discount Water – for
example, the telephone number, inventory and clientele – rather than providing them to the Trustee
as was required, the Debtor plainly "removed or concealed assets." *Fla. Stat.* § 726.105(2)(g).

     Fraud also exists where the Debtor transfers property to another for consideration that is not
reasonably equivalent to the value of the asset transferred. *Fla. Stat.* §726.105(2)(h). Here, for
example, the Debtor apparently transferred the 2000 Mazda vehicle to Harvey Jacobson for *no*
consideration, much less the statutorily required reasonably equivalent consideration. Similarly,
although Harvey Jacobson and Barbara Jacobson claimed that the payment of their personal expenses
constituted repayment of loans and unpaid wages, the evidence does not support this claim. Their
conduct – Mr. Jacobson routinely signing Mrs. Jacobson's name on checks, Mrs. Jacobson's
nominee presidency of the Debtor and Discount Water and the other acts and omissions discussed
above – give rise to strong inferences against them. As such, where there is no documentation of

any such loan – no firm repayment date, no interest rate – and the only evidence supporting the claim

of loan is their self-serving testimony coupled with some checks, the Court declines to accept the

Jacobsons' current explanation for these facts.[15]

Indeed, the Jacobsons admit that there was no documentation of any such loan, and no

agreement establishing Mr. Jacobson's salary. The Jacobsons therefore did not establish that they

provided reasonably equivalent consideration for the property and funds they caused the Debtor to

transfer to them.

The Debtor's insolvency at the time of, or as a result of, a transfer is also evidence of fraud.

*Fla. Stat.* §726.105(2)(I). The Jacobsons admit that the Debtor was insolvent at all times relevant.

Uncontroverted expert testimony from the Trustee's expert, Soneet Kapila, also established that the

Debtor made transfers of at least $8,732.19 within a year of the bankruptcy case. (*See* Ex. 51,

Attachment A thereto).

Finally, a transfer "shortly before or shortly after a substantial debt was incurred" is also a

badge of fraud. (*Fla. Stat.* §726.105(2)(j)). On December 24, 2003, an Award of Arbitration was

issued against the Debtor (and in favor of EcoWater) in the amount of $8,615.47. A Minnesota state

---

[15] Exhibit A, a summary of which has been attached hereto as "Order Exhibit A", contains a number of checks which Mr. Jacobson testified were loans to the Debtor. However, no independent evidence corroborates Mr. Jacobson's testimony. Indeed, although some of the checks have "loan" written on the check, many others do not. The Jacobsons admit there was no repayment schedule or obligation, no agreed upon interest rate, or any other loan terms or agreement. Mrs. Jacobson had no role whatsoever in the Debtor. Mr. Jacobson did not negotiate any such loan terms with anyone on behalf of the Debtor. Some of the checks within Order Exhibit A preceded the incorporation of the Debtor. I conclude that these were capital contributions. At least one check, No. 1450 dated June 15, 2003 in the amount of $1,056.26, states it is for "insurance" and the amount roughly corresponds with the regular insurance payment to Vista Health. (*See* Ex. 107). As discussed earlier, the Debtor should not have made at least half of the health care benefit payments it did make, and thus these amounts cannot properly be considered loans of which Mr. and Mrs. Jacobson are entitled to repayment. Finally, Check No. 1419 dated March 13, 2003, and Check No. 1485 dated August 15, 2003 are to the same lawyer and law firm who represented the Debtor and incorporated Defendant Discount Water. Mr. Jacobson testified that this law firm represented him individually. As discussed elsewhere, inasmuch as the Jacobsons bear the burden of advancing the affirmative defense of their loan and there is no competent evidence for this Court to determine what legal services were paid for by these checks, there is no evidence to support the claim that they were made for the Debtor's benefit.

court confirmed the Award of Arbitration and entered judgment against the Debtor (and in favor of EcoWater) in the amount of $10,846.76 on March 2, 2004, and EcoWater subsequently domesticated the Minnesota judgment in Florida. This judgment was a substantial debt in light of the Debtor's limited assets. However, the Debtor made numerous transfers to and on behalf of Mr. Jacobson and Mrs. Jacobson after entry of that judgment.

Thus, the evidence establishes at least eight badges of fraud with respect to the Debtor's transfers to and for the benefit of the Jacobsons and Discount Water during the year preceding the Debtor's bankruptcy filing. These transfers thus were, as a matter of law, made with actual intent to "hinder, delay, or defraud" creditors, and may be avoided pursuant to 11 U.S.C. §548(a)(1). These transfers totaled $8,732.19, and the Court shall enter judgment in favor of the Trustee in this amount on Counts I and VIII.

### 2. Fraudulent transfers under 11 U.S.C. § 548(a)(1)(B)

The Trustee may also avoid under § 548(a)(1)(B) any transfer of the Debtor for less than "reasonably equivalent value" that occurred within a year of the bankruptcy petition at a time when the Debtor was either insolvent or became insolvent as a result of the transfer or the transferee was an insider. Count II (Fraudulent Transfer as to Harvey Jacobson) and Count IX (Fraudulent Transfer as to Barbara Jacobson) seeks such relief. 11 U.S.C. § 548(a)(1)(B). Here, none of the transfers to or on behalf of Harvey or Barbara Jacobson were for reasonably equivalent value. Moreover, the Jacobsons have failed to establish that the funds they contributed to the Debtor were loans and at least Barbara Jacobson did not demonstrate any entitlement to salary.[16] Once the Trustee has made his *prima facia* case that a transfer constitutes a fraudulent transfer, as the Trustee did here, the burden of producing evidence shifts to the transferee to demonstrate that the Debtor received a

---

[16] As noted below, Harvey Jacobson contended that none of the payments to him were salary, either.

21

benefit or that there was some legitimate purpose for the transfer. *See In re Acequia*, 34 F.3d 800, 806 (9ᵗʰ Cir. 1994); *In re Minnesota Utility Contracting, Inc.*, 110 B.R. 414 (D. Minn. 1990). As discussed above, there is no evidence that Mrs. Jacobson provided any services to the Debtor, and she admits that she did not. (Trial Transcript at 60, line 22 through 63, line 16). According to Mrs. Jacobson, her "employment" with the Debtor was fabricated to provide her 40 quarters of Social Security eligibility. (*See* Trial Transcript at 87, line 24 through 88, line 8). As noted above, these false representations to the Social Security Administration appear to constitute violations of at least three separate provisions of federal criminal law. The testimony of Mr. Jacobson with respect to his entitlement to salary was (a) he was an independent contractor because his payment did not constitute salary; but (b) he had no written agreement with the Debtor and under his oral agreement – in the "negotiation" of which he represented both himself and the Debtor – his entitlement was to payment for services provided if and only if funds were available.[17]

Curiously, on a number of occasions during the period when the Debtor's business was heading into its ultimate collapse, the Debtor (through Harvey Jacobson) issued checks payable to Mr. Jacobson which he immediately endorsed over to the Debtor and deposited back into the Debtor's bank account. I could not understand the rationale for this pattern of behavior and asked Mr. Jacobson at trial why he had done so. He explained that these transactions were undertaken for the sole purpose of inflating Mr. Jacobson's notional income from the Debtor in order to inflate his Social Security earnings, with the goal of increasing his Social Security benefits. While these transactions apparently had no direct effect on the Debtor, since no money actually changed hands, they are consistent with the pattern of Social Security fraud described above relating to Mrs. Jacobson's "salary" from the Debtor. As with those transactions, the attempt by Mr. Jacobson to

---

[17] Since the Debtor was insolvent , *a fortiori* funds were not available.

inflate his earnings in this way appears to be violative of 42 U.S.C. § 408, 18 U.S.C. § 1001, and, perhaps, 18 U.S.C. § 371.

In addition to the round-trip check issuance-and-redeposit described above, Mr. Jacobson undertook to make certain "loans" to the Debtor during the final months prior to bankruptcy. Again, and in response to my inquiry, Mr. Jacobson stated that he made loans to the Debtor in order to provide the Debtor with sufficient funds to pay him in order to artificially inflate his Social Security earnings. The record includes no evidence to show, and the Defendants have offered no explanation of, how such a scheme could add value to the Debtor. Accordingly, the Jacobsons did not prove – as to any of the transfers by the Debtor to them or for their benefit – their affirmative defense that the transfers were for reasonably equivalent value.

The Court holds, as to Counts II and IX, the evidence established that the Debtor made transfers totaling $8,732.19 to or for the benefit of Harvey and Barbara Jacobson during the year preceding its bankruptcy. (See Ex. 51 at Ex. A thereto). There is no evidence that the Debtor received any reasonably equivalent value for these amounts. The transfers were to insiders, and the expert testimony established that the Debtor was insolvent throughout this time. Accordingly, the Court shall enter judgment in the Trustee's favor and against Harvey and Barbara Jacobson jointly and severally in the amount of $8,732.19.

### 3. Fraudulent transfers under Florida Statutes

The Trustee is authorized to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" 11 U.S.C. §544(b)(1); *see, e.g., In re Aerial Transit Co.*, 190 B.R. 464 (Bankr. S.D. Fla.1996); *In re Marlar*, 252 B.R. 743, 753 (8th Cir. BAP 2000) (quoting *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F. 3d 764, 769 n. 11 (8th Cir. 2000)).

To invoke these avoidance powers, the Trustee must demonstrate: (i) the existence of an actual creditor; (ii) with an allowable claim; (iii) who under non-bankruptcy law could avoid the Transfer, at least in part. 11 U.S.C. §544(b); *In re Scott Wetzel Services, Inc.,* 293 B.R. 791 (Bankr. M.D. Fla.2003).[18]  The Trustee bears the burden of proving the existence of a qualified unsecured creditor, and if the creditor is estopped or barred from recovery for some reason, so is the Trustee. *In re Marlar, supra,* 252 B.R. at 754 (*citing Brent Explorations, Inc. v. Karst Enter. Inc. (In re Brent Explorations, Inc.*), 31 B.R. 745, 748 (Bankr. Colo.1983)).

As discussed above, by virtue of the EcoWater judgment, the Trustee has satisfied his burden and has established that there exists at least one unsecured creditor, EcoWater, who holds a claim against the Debtor that is allowable under 11 U.S.C. § 502.

The analysis now shifts to the "applicable law", which in this instance is Fla. Stat. §726.105(a) and (b).

Through the Trustee's statutory powers under 11 U.S.C.§ 544, transfers made with an actual intent to defraud, delay or hinder creditors under Florida law are recoverable in bankruptcy.  As shown, the applicable badges of fraud overwhelmingly indicate such an intent.  The Debtor made a total of $182,371.75 of such transfers during the four years preceding its bankruptcy.  Accordingly, the Trustee is entitled to judgment in this amount on Counts III and X.

Transfers made for less than reasonably equivalent value that were made when the Debtor was insolvent, or caused the insolvency, are likewise avoidable under Florida law.  *Fla. Stat. §§* 726.105(1)(B) and 726.106.  At all times relevant, the Debtor was insolvent and made transfers (for

---

[18]  Bankruptcy courts do not generally require the trustee to plead the existence of unsecured creditor by name, though the trustee must ultimately prove such a creditor exists. 11 U.S.C. § 544(b); *In re APF CO.*, 274 B.R. 634 (Bankr. D. Del. 2001).

less than reasonably equivalent value) totaling $24,972.12. (*See* Ex. 51 at Ex. A thereto). Moreover, the Trustee proved that there were creditors during this period (*e.g.,* EcoWater). Accordingly, the Trustee is entitled to judgment against Harvey and Barbara Jacobson, jointly and severally in the amount of $24,972.12 on Counts IV, V, VII and XI. By separate document, the Court shall enter such judgment.

### 4. Preferential Transfers

As discussed above, the Jacobsons did not make *bona fide* loans to the Debtor. Even if the Jacobsons were able to show evidence that they had done so, any repayments that the Debtor made within a year of its bankruptcy filing would, in the context of this case, be voidable preferential transfers. 11 U.S.C. § 547(b) permits avoidance of any transfer: (1) to or for benefit of a creditor; (2) for or on account of an antecedent debt owed by the Debtor before such transfer was made; (3) made while the debtor was insolvent; (4) that allows the creditor to receive more than the creditor would have received in a Chapter 7 liquidation had the transfer not been made. Where, as here, insolvency is proved, transfers to insiders are recoverable as preferential transfers if made within a year preceding the bankruptcy filing. 11 U.S.C. § 547(b)(4)(B).

Thus, even if the Debtor's payments to the Jacobsons were truly repayment of loans, the Trustee would still be entitled to recover such amounts. Mr. Jacobson admits that he received payments for these alleged loans totaling $1,190.00 during the year prior to the Debtor's bankruptcy. (*See* Order Exhibit B attached hereto). The Trustee's expert testimony established that these transfers were for more than Mr. Jacobson would have received in a chapter 7 liquidation had the transfers not been made. Accordingly, the Trustee is entitled to judgment against Harvey Jacobson on Count VI in the amount of $1,190.00 and the Court shall enter same by separate judgment.

### 5. 11 U.S.C. § 550(a)

Under 11 U.S.C. § 550(a), "[t]o the extent that a transfer is avoided under section …544…of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."

Once the Trustee has established that an identified transfer is avoidable, the Trustee may recover the entire fraudulent transfer under § 550(a). *Moore v. Bay*, 284 U.S. 4 (1931); *see also Myers v. Brook*, 708 So. 2d 607 (Fla. 2nd Dist. Ct. App.1998). Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred. *Morris v. Kansas Drywall Supply Company, Inc. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D. Kan.1991); *Pritchard v. Brown (In re Brown)*, 118 B.R. 57, 60 (Bankr. N.D. Tex.1990); *Tidwell v. Chrysler Credit Corp. (Matter of Blackburn)*, 90 B.R. 569, 573 (Bankr. M.D. Ga.1987).

As discussed above, the Court shall enter judgment so that the Trustee may recover the avoided transfers from Harvey and Barbara Jacobson.

### C.    Turnover, accounting, injunctive relief (Counts VII, XIII, XIV, XVIII)

"[A]n entity, other than a custodian, in possession, custody, or control . . . of property that the trustee may use, sell, or lease . . . shall deliver to the trustee, and account for, such property or the value of such property . . . ." 11 U.S.C. § 542(a); *In re Bidlofsky,* 57 B.R. 883, 900 (Bankr. E.D. Mich. 1985). Discount Water and/or the Jacobsons retain possession of the Debtor's telephone number, and customer list.[19] The Trustee may use, sell or lease this property for the benefit of the

---

[19] As the customer list was "compiled through the industry of the" Debtor and is "not just a compilation of information commonly available to the public" it is a trade secret in which the Debtor has a protectable property interest. *See Kavanaugh v. Stump,* 592 So. 2d 1231, 1232 (Fla. 5th Dist. Ct. App. 1992); *see also, In re R&R Associates of Pinellas County, Inc.*, 119 B.R. 302, 304 (Bankr. M.D. Fla. 1990); *Braman Motors, Inc. v. Ward*, 479 So. 2d 225, 226 (Fla. 3rd Dist. Ct. App. 1985).

Debtor's estate and Defendants must therefore turn over and account for this property. Moreover, as discussed above, the Court, by separate document, will enjoin the Jacobsons and Discount Water from further using the certain specified property of the estate either personally or in the operation of Discount Water.

The injunction and order for accounting are consistent with the Court's authority under *Fla. Stat.* § 726.108. This statute provides remedies for the recovery of fraudulent transfers. The Court shall issue this injunction by separate order to prevent any further disposition by Harvey or Barbara Jacobson or a transferee, or both, of the assets transferred or of other property. Additionally, Section 105 of the Bankruptcy Code provides that the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11. The Court, in the exercise of its core jurisdiction to recover property of the estate utilizes Section 105 as additional authority for its issuance of an injunction.

## III. REFERRAL FOR CRIMINAL INVESTIGATION

Pursuant to 18 U.S.C. § 3057 and the procedures established by this Court for the referral of matters which appear to constitute violations of Title 18 or other laws of the United States, the Court hereby requests the Office of the United States Trustee to undertake a review and investigation of the matters set forth herein and to report to the United States Attorney for the Southern District of Florida all of the facts and circumstances of this case, the names of the witnesses, and the offense or offenses believed to have been committed.

## IV. CONCLUSION

The Jacobsons treated the Debtor in a manner inconsistent with their obligations as fiduciaries. They failed to manage the Debtor properly or to protect its assets. Instead, when the Debtor's creditors sought payment of their debts, the Jacobsons took for themselves the small value

27

in the business and continued to operate that business under a new name, Discount Water. Fundamental principles of bankruptcy law require that the Debtor's assets or their value be restored to the Debtor's estate for distribution to creditors. Accordingly, the Court will enter judgment in favor of the Trustee by separate by separate document pursuant to Fed.R.Bankr.P. 7054.

###

Copies provided to:

Thomas M. Messana, Esquire
Kevin Gleason, Esquire
Office of the United States Trustee